Theodore Smith, Esq.
Catherine Francke, ADA

STATE OF MAINE
AROOSTOOK, ss

SUPERIOR COURT
DOCKET NO. 03-348

*CAH - ARO - 2/25/2004*

STATE OF MAINE )
)
)
)
) ORDER ON MOTION
) TO SUPPRESS
vs. )
)
) **DONALD L. GARRECHT**
) **LAW LIBRARY**
)
) **MAR 3 2004**
JASON PELLETIER )
Defendant )

Pending before the court is the Defendant's Motion to Suppress. For the reasons set forth herein, the court denies the motion.

## BACKGROUND

Based on the evidence presented at hearing, the court makes the following findings of fact. At approximately 1:20 am on 8/30/03, Juan Mezarina (Mezarina) was working as a Customs and Immigration officer at the U.S. Border in Fort Kent. The Defendant pulled up to the checkpoint in his motor vehicle. Mezarina was in his booth and observed nothing unusual about the operation of the vehicle as it approached and stopped. The Defendant was the driver and was about arm's length away from the officer. In the usual manner, Mezarina asked the Defendant if he had anything to declare. The Defendant said "No". When the Defendant spoke, Mezarina detected an odor of alcohol and decided to do a secondary check of vehicle. Mezarina asked the Defendant to step out of his vehicle so he could check the back of the vehicle. When the Defendant stepped out of vehicle he stumbled. Mezarina concluded that the Defendant was showing signs of impairment he associated with alcohol use and he decided to refer the Defendant to the secondary officer, William Caron, for a further check. (See State's Ex. #1)

Mezarina instructed the Defendant to pull his vehicle over into the parking area. The Defendant did so and parked without difficulty. Officer William Caron then checked the vehicle.[1] When he also detected an odor of alcohol, he had the Defendant accompany him inside the station. When Caron went inside he called Fort Kent PD and reported that there was "a possible OUI at the border".

---

[1] Officer Caron is a retired Maine State Police Officer with many years of experience with cases involving impaired motor vehicle operators. He is well known to Officer Martin.

Officer Richard Martin (Martin) of the Fort Kent Police Department responded to this call. When he arrived at the border, Martin observed the Defendant sitting in the waiting area. When he approached the Defendant, he could also smell alcohol and he observed that the Defendant had blood shot eyes. Both Mezarina and Caron reported their observations to Martin who then had the Defendant perform three field sobriety tests. These included the HGN test, (Martin is certified), the "walk and turn" test and the "one leg stand" test). According to Martin, who is 15-year veteran police officer, the Defendant failed all three tests and the officer concluded that the Defendant was impaired. Martin arrested the Defendant and took him to the station.

Neither Mezarina nor Caron nor Martin ever observed any evidence of erratic motor vehicle operation or other violation of law. All three officers observed signs of alcohol use by the Defendant and Mezarina observed the Defendant driving his motor vehicle.

The Defendant contends that the police did not have a reasonable articulable suspicion to detain him at the border and that the officers lacked probable cause to believe that he had been operating a motor vehicle while impaired. The court disagrees.

## DISCUSSION

*State v Cushing*, 602 A.2d1169 (Me. 1992) is substantially similar to the case at bar and supports the conclusion that Martin had a sufficient, reasonable, articulable suspicion, within the collective knowledge of Mezarina, Caron and himself that criminal conduct had occurred, was occurring or was about to occur. The Law Court has stated "the facts needed to support an investigatory search need not be based on the officer's personal observations, but can be provided by an informant if the information carries sufficient 'indicia of reliability'". *Cushing* at 1170. In *Cushing*, the court found that information which came from an off-duty police officer whose experience and training had made him familiar to the signs of intoxication, combined with the arresting officer's own observations of questionable behavior of the Defendant, gave the arresting officer objective, reasonable suspicion to believe the driver was operating under the influence. "The totality of the information available to the officer therefore justified the stop of the Defendant." *Cushing* at 1170.

In this case, the court concludes that each officer, independently, had a sufficient basis for a reasonable, articulable suspicion to detain the Defendant but that the collective police knowledge obtained from Mezarina, Caron and his own observations of the Defendant, including the observations made of the Defendant's performance on the administered field sobriety tests clearly constituted a sufficient basis to form a reasonable suspicion that the Defendant was operating under the influence. The court concludes that the *totality* of the information available to Officer Martin meets the "indicia of reliability" standard set forth in *Cushing* and further that the totality of the information available to Officer Martin justified his seizure of the Defendant.

The court also concludes that Martin had probable cause to require the Defendant to submit to a blood alcohol test. The Law Court has stated that submission to an implied

consent blood-alcohol level test is mandatory if an officer has probable cause to believe that a person has committed an OUI violation. State v. Forsyth 2002 ME 75, ¶10, 795 A.2d 66,69. The Law Court has set forth the following principles of law regarding the determination of probable cause:

1. Probable cause to arrest [or search] exists whenever facts and circumstances within the knowledge of the police and of which there was reasonably trustworthy information would warrant a prudent and cautious person to believe that the arrestee had committed the crime. The information determining the existence of probable cause is not limited to what [one officer] knew of his own personal knowledge, but includes all the information known to the police. Id.

2. The determination of the existence of probable cause is based on an objective standard, not on whether the particular officer believed he had probable cause. Id.

3. The probable cause standard for requiring a person to take a blood-alcohol test has a very low threshold; it is less than a fair preponderance of the evidence. Id.

4. A trial court may consider the factual inferences drawn by police officers, but should not defer to an officer's subjective opinion as to whether the totality of information available to him or her dictates a particular conclusion. Id.

Notwithstanding the absence of evidence of erratic motor vehicle operation, Mezarina's observation of the Defendant's unsteadiness on his feet as he alighted from his vehicle and Caron's and Martin's observations of the odor of alcohol, blood shot eyes and poor field sobriety test performance satisfy the forgoing standards.

The entry shall be: The Defendant's Motion to Suppress is denied.

Date: February 23, 2004

JUSTICE, SUPERIOR COURT
E. ALLEN HUNTER

FILED & ENTERED
SUPERIOR COURT

FEB 25 2004

AROOSTOOK COUNTY

3