2002 ME 75

**STATE of Maine**

v.

**Gerald A. FORSYTH.**

Supreme Judicial Court of Maine.

Argued: April 3, 2002.
Decided: May 3, 2002.

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Attorney General (orally), Augusta, for State.

Wayne R. Foote, Esq. (orally), Foote & Temple, Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Pursuant to 15 M.R.S.A. § 2115–A(1) (Supp.2001),[1] the State appeals from an order of the District Court (Skowhegan, *Clapp, J.*), suppressing evidence of the results of the blood-alcohol level test given to the defendant, Gerald A. Forsyth.[2] We agree with the State's contention that the evidence was more than sufficient to establish that there was probable cause to believe that Forsyth was under the influence of intoxicants and for the administration of a blood-alcohol test, and that the District Court erred in concluding otherwise. Accordingly, we vacate that part of the District Court's order suppressing the results of the blood-alcohol test.

[¶ 2] The District Court made the following undisputed findings, which are well supported by the record:

At about 8:30 p.m. on [June] 30, 2000, Gerald Forsyth drove into the United States border checkpoint north of Jackman, Maine as if arriving from Canada. He pulled into the wrong side of the checkpoint and was advised by Federal INS officer [Roy] Williams that he must back up and drive his vehicle into the checkpoint on the other (southbound) side. Instead, he backed his car up [into] an annex parking lot and shut off the vehicle's lights. He remained there for [a] while and eventually put the

lights back on and, once again, drove it into the wrong entry side. He was again instructed to back up and enter on the appropriate side. He then did this. The greeting Customs Officer, [Lori] Poulin, noticed a smell of alcohol on Mr. Forsyth's breath and observed him to be disorientated. Mr. Forsyth appeared to not know that he had been in Canada. He advised the officer that he had been drinking from a pint sized bottle of whiskey which he said he had purchased earlier in the day in New Hampshire. The officer had Mr. Forsyth exit the vehicle and the car was searched. The officer confiscated that partly empty whiskey bottle and several firearms, one loaded.... [This] information was relayed to Officer Darryl Peary of the Maine State Police who Officer Williams called to report suspected OUI and firearm violations. This call was made [at] about 9:00 P.M. and Officer Peary, then on patrol many miles away, arrived at the checkpoint approximately two hours later. In the interim, the federal officers, both armed and in uniform, detained Mr. Forsyth in their presence in the lobby of this remote checkpoint.... Mr. Forsyth was still dutifully sitting where he had been instructed to sit in the lobby when Officer Peary arrived shortly before 11:00 P.M. Officer Peary initially conferred with Officer Williams and learned the details of the officers' observations and accepted possession of the items confiscated by them .... Officer Peary then approached Mr. Forsyth with the intention to investigate the OUI

---

1. Section 2115–A(1) provides that, appeals may be taken by the State from the District Court, directly to the Law Court, on questions of law in criminal cases "[f]rom an order of the court prior to trial which suppresses any evidence, including, but not limited to, physi-

cal or identification evidence." 15 M.R.S.A. § 2115–A(1) (Supp.2001).

2. The State obtained the necessary approval of the Attorney General prior to filing this appeal as required by 15 M.R.S.A. § 2115–A(5) (Supp.2001) and M.R.App. P. 21(b).

and firearms violations referred to him [by] the federal officers.

Initial investigatory questioning of Mr. Forsyth informed Officer Peary that the Defendant had been traveling that day from Connecticut to a friend's home in Solon, Maine. The officer observed that Mr. Forsyth appeared disoriented and did not know how he came to be at the border checkpoint. He informed the officer that he had relatives in Calais, Maine. He smelled of alcohol consumption and had red and glassy eyes. He confirmed to the officer that he had purchased the whiskey in New Hampshire just before entering Maine at 1:00 or 1:30 P.M. and had immediately begun consuming its contents as he traveled north. The Officer then told Mr. Forsyth to rate his state of sobriety on a scale of 1 to 10 with 1 being entirely sober and 10 being totally drunk. Mr. Forsyth replied "3 or 4."

[¶ 3] Officer Peary then took Forsyth into the office off of the lobby and conducted six field sobriety tests. Officer Peary first performed an Horizontal Gaze Nystagmus (HGN) examination, which consisted of some verbal components in that Forsyth was required to respond to certain preliminary questions concerning whether Forsyth had any neurological or medical conditions. Officer Peary observed five intoxication clues of the HGN procedure, which indicated to him that Forsyth was impaired, potentially due to the influence of alcohol. The officer then asked Forsyth to recite the alphabet from E to L, but Forsyth failed the requested recitation on three attempts.

[¶ 4] Officer Peary then asked Forsyth to count backwards from sixty-seven to fifty-eight. Forsyth failed to stop at fifty-eight and continued onto forty-nine in his attempt to repeat the requested recitation. Forsyth failed a finger dexterity test, which included a verbal component of him counting from one to four and then from four to one in succession. Forsyth attempted a walk and turn test with a verbal counting component that is intended to examine a person's balance and ability to follow instructions. Forsyth improperly turned in the middle of the test and stepped over one-half of an inch out of line on one step, and stepped completely out of line on another step. Forsyth was unable to properly complete the one-leg stand test, which involved standing on one leg and counting by seconds until told to stop.

[¶ 5] Based on the information he received from the INS officers, in part on the field sobriety tests, and on his own personal observations of Forsyth, Officer Williams concluded that Forsyth had probably been operating under the influence at 9:00 P.M. and administered an implied consent blood-alcohol level test at about 11:10 P.M. Forsyth was also questioned about the loaded gun. Forsyth was never given a "Miranda" warning.

[¶ 6] After being charged with operating under the influence of intoxicants in violation of 29–A M.R.S.A. § 2411 (1996) (Class D) [3] and with possessing a loaded firearm in a motor vehicle in violation of 12 M.R.S.A. § 7406(9–A)(B) (Class E),[4] For-

---

3. Section 2411 states, in pertinent part, the following:

    **1. Offense.** A person commits OUI, which is a Class D crime unless otherwise provided, if that person operates a motor vehicle:
    **A.** While under the influence of intoxicants; or

    **B.** While having a blood-alcohol level of 0.08% or more.

4. Section 7406(9–A)(B) provides that "a person is guilty of . . . having a loaded firearm in or on a motor vehicle if that person . . . [w]hile in or on a motor vehicle . . . has any firearm with a cartridge or shell in the cham-

syth filed a motion to suppress, arguing that all the oral statements made by him to Officer Peary, including the verbal components of the field sobriety tests should be excluded because those comments were made in response to custodial interrogation without a Miranda warning. At the suppression hearing, Forsyth amended his motion to suppress to include a "fruit of the poisonous tree" claim grounded in *Dickerson v. United States,* 530 U.S. 428, 438–43, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000), in which the United States Supreme Court concluded that the exclusionary rule may apply to Miranda violations in some cases. With this latter argument, Forsyth sought to suppress as "poisonous fruit" all the field sobriety test results, all the observations made by Officer Peary during those tests, as well as the results of the blood-alcohol level test that was administered to Forsyth.

[¶ 7] The District Court granted the motion in part. The court suppressed all of Forsyth's oral statements made in response to Officer Peary's questioning, except for his answers to routine booking questions, and suppressed the verbal components of the field sobriety tests because it concluded that Forsyth was in custody at the time of the questioning and was not properly informed of his Miranda rights prior to making the statements. The court also suppressed the blood-alcohol level test results, reasoning that without Forsyth's responses to Officer Peary's questioning and without the verbal components of the field sobriety test there was insufficient probable cause to administer the test. The court relied on Officer Peary's subjective belief that there was insufficient prob-

able cause to administer the test without Forsyth's responses and the verbal components of the field sobriety tests.

[¶ 8] The State appeals only from the District Court's decision to suppress the blood-alcohol level test, and contends that that part of the order to suppress should be vacated because the District Court erred in concluding that there was no probable cause for administering the test.[5]

[¶ 9] We review rulings on motions to suppress for errors of law or clearly erroneous findings of fact. *State v. Anderson,* 1999 ME 18, ¶ 6, 724 A.2d 1231, 1233. "A ruling on a motion to suppress evidence based on uncontroverted facts involves a legal conclusion that we review independently on appeal." *State v. Stade,* 683 A.2d 164, 165 (Me.1996). Neither party disputes the factual findings made by the District Court, but the State challenges the District Court's legal conclusions drawn from those facts. We review those conclusions de novo. *See id.*

[¶ 10] Submission to an implied consent blood-alcohol level test is mandatory if an officer has probable cause to believe that a person has committed an OUI violation. 29–A M.R.S.A. § 2521(1) (1996 & Supp.2001).

> Probable cause to arrest [or search] exists whenever facts and circumstances within the knowledge of the police and of which there was reasonably trustworthy information would warrant a prudent and cautious person to believe that the arrestee had committed the crime. The information determining the exis-

ber or in an attached magazine." 12 M.R.S.A. § 7406(9–A)(B).

**5.** The State is not appealing the District Court's finding that Forsyth was in custody for Miranda purposes, nor is it appealing from the court's decision to suppress the testi-

monial components of the field sobriety tests; rather the State challenges the trial court's conclusion that the arresting officer lacked probable cause to administer a blood-alcohol test to Forsyth.

tence of probable cause is not limited to what [one officer] knew of his own personal knowledge, but includes all the information known to the police.

*State v. Candage,* 549 A.2d 355, 360 (Me. 1988) (citation omitted); *see also State v. Carr,* 1997 ME 221, ¶ 7, 704 A.2d 353, 356 ("probable cause is evaluated from the collective information known to the police rather than the personal knowledge of the arresting officer"). The determination of the existence of *probable cause* "is based on an objective standard, not on whether the particular officer believed he had probable cause." *State v. Foy,* 662 A.2d 238, 240 (Me.1995); *accord State v. Boylan,* 665 A.2d 1016, 1019 (Me.1995); *State v. Enggass,* 571 A.2d 823, 825 (Me.1990); *State v. Parkinson,* 389 A.2d 1, 8 (Me.1978); *State v. Heald,* 314 A.2d 820, 828 (Me.1973).

[¶ 11] In *Enggass,* 571 A.2d at 824–25, the arresting officer observed the defendant's car do a 360–degree turn in the road and twice swerve sharply while travelling a quarter of a mile. When the officer pulled the defendant's car over, "he observed that defendant's eyes were 'real bloodshot,' that defendant's speech was 'hesitant, real distinct' as if 'he was concentrating on what he was saying,' and that defendant smelled of alcohol." *Id.* at 825. The defendant then failed to properly perform each field sobriety test administered by the officer. *Id.* When asked to take a pass/fail blood-alcohol test, the defendant replied that his results would be a "whopper" because he had been drinking heavily. *Id.*

[¶ 12] In granting the defendant's motion to suppress all of the officer's observations as well as the blood-alcohol test result, the trial court in *Enggass* concluded that the arresting officer relied on an inappropriate preliminary pass/fail blood-alcohol test in determining that probable cause existed to arrest the defendant for a sus-

pected OUI violation. *Id.* The trial court stated that regardless whether

the officer may have had all the reason in the world to find probable cause for arrest, ... [because the officer] said that part of his decision for making the arrest had to do with the fact that ... [the defendant] failed to pass the pass/fail [blood-alcohol test] ... [which] is not acceptable as one of the factors to be used in the form of proof, [the trial court was] going to find that [the officer] didn't have probable cause for arrest.

*Id.* at 824.

[¶ 13] We vacated the trial court's suppression order and explained that by looking at what the officer subjectively believed, the trial court employed the wrong standard in determining whether there was sufficient probable cause because probable cause is based on an objective standard. *Id.* at 824–25. We concluded that there was more than enough evidence "to warrant 'the belief of a prudent and cautious person' that the defendant was operating under the influence," even without the preliminary pass/fail blood-alcohol test. *Id.* at 825.

[¶ 14] In the case of Forsyth's stop, there was more than sufficient evidence to support a reasonable belief that Forsyth was driving while intoxicated. "The probable cause standard for requiring a person to take a blood-alcohol test has a very low threshold." *State v. Webster,* 2000 ME 115, ¶ 7, 754 A.2d 976, 977–78; *see also State v. Bolduc,* 1998 ME 255, ¶ 7, 722 A.2d 44, 45 (the standard for probable cause is less than that for a fair preponderance of the evidence). For there to be probable cause for OUI, an officer only needs evidence sufficient to support the reasonable belief "that the person's senses are affected to the slightest degree, or to any extent, by the alcohol that person has had to drink." *Webster,*

¶ 7, 754 A.2d at 978. As an example, we have held that an officer's observation that the defendant made an improper u-turn, along with, after pulling the defendant over, smelling a strong odor of alcohol on the defendant's breath and hearing the defendant make an incredible statement believed to be made to cover-up the defendant's impairment, was more than sufficient to establish probable cause. *Id.*

[¶ 15] In this case, Officer Peary could rely upon the information provided to him by the INS officers, which included the following: Officers Williams and Poulin observed Forsyth twice drive his vehicle into the wrong side of the border checkpoint, once after being instructed on which lane to properly proceed into. The officers noticed a smell of alcohol on Forsyth's breath. They observed Forsyth to be disorientated, and it appeared to them that he did not know that he had been in Canada. Forsyth readily admitted to the officers that he had been drinking from a pint-sized bottle of whiskey, which they confiscated. Officer Peary also noticed that an odor of alcohol emanated from Forsyth's person, that Forsyth's eyes were red and glossy, and that Forsyth appeared to be disorientated when Officer Peary spoke with him. Forsyth's signalling of impairment during the HGN test, along with his poor turn and missteps during the walk-and-turn test, combined with the other facts present here, abundantly establish the reasonable belief of a prudent and cautious officer that Forsyth had been operating his vehicle while under the influence of alcohol, and more than justify Officer Peary's request that Forsyth submit to a blood-alcohol level test. The District Court's conclusion that there was insufficient evidence of probable cause is erroneous.

[¶ 16] Forsyth's contention that the trial court properly deferred to the officer's subjective opinion that, absent consideration of Forsyth's statements, he lacked probable cause is incorrect. A trial court may consider the factual inferences drawn by police officers, but should not defer to an officer's subjective opinion as to whether the totality of information available to him or her dictates a particular conclusion of law. *See United States v. Arvizu*, 534 U.S. 266, —— – ——, 122 S.Ct. 744, 750–51, 151 L.Ed.2d 740 (2002) (giving deference to the factual inferences drawn by experienced police officers and the district court judge, but assessing the legal conclusion of reasonable suspicion de novo.)

The entry is:

Order of the District Court is vacated in part. Remanded to the District Court for further proceedings consistent with this opinion.