2011 ME 20

**STATE of Maine**

v.

**Scott E. FLINT.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 21, 2010.

Decided: Feb. 10, 2011.

---

Heather Gonzales, Esq., Strike, Goodwin & O'Brien, Portland, ME, for Scott Flint.

Stephanie Anderson, District Attorney, William Barry, Asst. Dist. Atty., Portland, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1]   The line between an investigatory stop and a de facto arrest is often difficult to draw but highly significant—an arrest must meet the more demanding standard of probable cause.   In this case, because we conclude that the police had probable cause to arrest Scott E. Flint, we affirm the denial of Flint's motion to suppress entered in the Unified Criminal Docket (Cumberland County, *Eggert, J.*).

## I.  BACKGROUND

[¶ 2]   Early in the morning of July 29, 2009, while Scarborough Police Sergeant Eugene O'Neill was monitoring traffic along Route 1 in a marked cruiser, two motorcycles passed that he believed were speeding.   After pulling out behind the motorcycles, however, he concluded that they were traveling within the posted speed limit.   While he was still following them, one motorcycle turned into the parking lot of a closed medical center.   O'Neill continued following the second motorcycle for about one mile before turning around to drive back to the medical center parking lot.   The only vehicle in the area was a motorcycle, parked in the upper parking lot near the woods.   O'Neill did not see the driver.   After noting the motorcycle was still warm, he called for other officers to assist.

[¶ 3]   At around 1:00 a.m., Officers Brian Nappi and Michael Sawyer separately responded to the scene.   As Sawyer was en route, O'Neill radioed him that the second motorcycle had entered the lower parking lot.   Sawyer stopped to talk with the driver, and observed that he had glassy eyes and smelled of alcohol.   The driver admitted that he had been drinking over the last four hours.

[¶ 4]   When Sawyer and Nappi reached the upper parking lot, they used Sawyer's police canine to track the missing driver.   The canine picked up a scent at the abandoned motorcycle and led Nappi and Sawyer into a dark, densely wooded area.   Sawyer smelled alcohol, and soon afterward the officers observed a male, later identified as Scott Flint, lying on the ground.   They directed their flashlights at Flint but could not see his hands.   When ordered to show his hands, Flint remained motionless.   The officers repeated the order, and Flint raised his hands.   After twice being ordered to stand, Flint began to rise unsteadily to his feet, but he needed assistance to maintain his balance.   Flint was argumentative and uncooperative with the officers.   Once he was standing, Nappi handcuffed him.

[¶ 5] Nappi used handcuffs "for [his] safety due to the lighting, time of night, [and] the fact that [Flint] was concealing his hands." In addition, he "didn't know what [Flint] had on his person" and "couldn't do a search ... because of the lighting." As they exited the woods, Nappi smelled alcohol on Flint's breath and noted that Flint slurred his speech and had difficulty walking.

[¶ 6] When they reached the parking lot, Flint faced Nappi, stiffened his shoulders, and assumed an aggressive posture. Nappi patted him down, took his license, and placed him in the back of the police cruiser. Nappi then contacted dispatch and learned that the motorcycle in the parking lot was registered to Flint, who had a condition on his license prohibiting him from having any alcohol in his system while operating a motor vehicle. O'Neill told Nappi that he recognized Flint as the driver of the motorcycle. At that point, Nappi believed that Flint had been operating under the influence. He offered to remove Flint's handcuffs to allow him to participate in field sobriety tests. Flint refused to participate in the tests, and the officers placed him under arrest for operating under the influence.

[¶ 7] Flint was charged with operating under the influence (Class D), 29–A M.R.S. § 2411(1–A)(C)(2), (5) (2010);[1] violation of a license restriction (Class E), 29–A M.R.S. § 1251(1)(B) (2010); and unlawful possession of a license (Class E), 29–A M.R.S. § 2102(1–A) (2009).[2] He filed a motion to suppress the evidence obtained on the scene arguing, in relevant part, that the officers lacked reasonable suspicion for the investigative stop and that his detention outside the medical center was a de facto arrest without probable cause.

[¶ 8] After a hearing, the court denied Flint's motion to suppress, concluding that the officers had reasonable suspicion and that their actions, which were necessary for officer safety, were permissible within the limited nature of an investigatory stop. At his subsequent trial, Flint was found guilty on two counts, operating under the influence and violating a license restriction. The court (*Warren, J.*) sentenced Flint to serve sixty-five days in jail on the first count and fifteen days on the second count, to be served concurrently; suspended his license for three years; ordered him to participate in alcohol and drug education, treatment, and evaluation; and imposed fines.

## II. DISCUSSION

[¶ 9] Flint challenges the motion court's conclusion that the police measures were within the scope of a valid *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 20–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Although Flint concedes that officers engaged in an otherwise lawful stop must be able to take measures reasonably necessary to protect themselves from harm, *see State v. Kirby*, 2005 ME 92, ¶ 12, 878 A.2d 499, 502, he contends that here the officers' actions were tantamount to an arrest. There is no bright line distinguishing between investigatory stops, which can be justified by reasonable suspicion, and de facto arrests, which require probable cause. *See State v. Donatelli*, 2010 ME 43,

---

1. Title 29–A M.R.S. § 2411(1–A)(C)(2) has not been amended since the pertinent time, July 2009, but that section cross-references section 2411(1–A)(A), to which clarifying amendments were made by P.L.2009, ch. 447, § 37 (effective Sept. 12, 2009) (codified at 29–A M.R.S. § 2411(1–A)(A) (2010)).

2. Title 29–A M.R.S. § 2102(1–A) has since been amended. P.L.2009, ch. 493, § 2 (effective July 12, 2010) (codified at 29–A M.R.S. § 2102(1–A) (2010)).

¶¶ 11–12, 995 A.2d 238, 241–42. In this case, we conclude that it is unnecessary to evaluate whether the officers' actions exceeded the bounds of a permissible investigatory stop because there was probable cause to arrest Flint.

[¶ 10] We review a motion court's application of the law to undisputed facts de novo. *State v. Lavoie*, 2010 ME 76, ¶ 13, 1 A.3d 408, 412. If the court's ruling is "proper under the law, [it] may be affirmed, even if for a reason different than that given by the [motion] court." *State v. Gorman*, 2004 ME 90, ¶ 41, 854 A.2d 1164, 1174; *accord State v. Brochu*, 237 A.2d 418, 421 (Me.1967). Thus, we turn to what is required to establish probable cause for operating under the influence.

[¶ 11] A driver commits the offense of operating under the influence if that individual's "mental or physical faculties are impaired, however slightly or to any extent." *State v. Cilley*, 1998 ME 34, ¶ 11, 707 A.2d 79, 83. In light of this standard, probable cause to arrest for operating under the influence exists when the facts and circumstances within the collective knowledge of the police "would warrant a prudent and cautious person to believe" that the driver's mental or physical faculties are impaired by the use of alcohol. *State v. Forsyth*, 2002 ME 75, ¶ 10, 795 A.2d 66, 69–70 (quotation marks omitted); *Cilley*, 1998 ME 34, ¶ 11, 707 A.2d at 83.

[¶ 12] The probable cause standard is flexible and based on common sense. *State v. Bradley*, 658 A.2d 236, 237–38 (Me.1995) (citing *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). Although requiring more than mere suspicion, probable cause can be satisfied on less than the quantum of proof necessary to establish a fact by a fair preponderance of the evidence. *See Cilley*, 1998 ME 34, ¶ 11, 707 A.2d at 83.

And it is the objective view of the circumstances that matters; the arresting officer's subjective belief regarding whether probable cause exists is not determinative. *Forsyth*, 2002 ME 75, ¶ 10, 795 A.2d at 70.

[¶ 13] In the context of this case, probable cause to arrest Flint existed at the time the officers placed him in handcuffs. Shortly after O'Neill pulled out behind him, Flint avoided being followed by turning his motorcycle into the parking lot of a closed medical center at approximately 12:45 a.m. O'Neill arrived in the parking lot soon after he had seen Flint enter it, and saw only one vehicle, a motorcycle, its engine still warm. Sawyer learned that Flint's companion had been drinking and showed signs of impairment, and then used his police canine to track from the abandoned motorcycle to Flint. Even before seeing Flint, who was hiding from the police in the woods, Sawyer smelled alcohol. Flint was argumentative with the police and was unable to stand without assistance. Viewing objectively the facts that were within the collective knowledge of the police, an ordinarily prudent and cautious officer could have concluded at that moment that Flint had been operating a motorcycle and that his mental and physical faculties were impaired.

[¶ 14] We conclude that the court's ruling was proper, but for a reason different than that given by the court. Because there were sufficient facts to establish probable cause, and therefore to justify arresting Flint, we need not address the issues surrounding what steps law enforcement officers may take to protect themselves during a *Terry*-type stop.

The entry is:

Judgment affirmed.