MAINE SUPREME JUDICIAL COURT                                   Reporter of Decisions
Decision:      2017 ME 103
Docket:        Aro-16-411
Argued:        April 11, 2017
Decided:       May 25, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

DALE E. BLIER

GORMAN, J.

[¶1]  The State of Maine appeals from a decision of the trial court (Fort Kent, *Soucy, J.*) granting Dale E. Blier's motion to suppress evidence that resulted in a criminal complaint charging Blier with operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(A) (2016).  The State argues that the court erred in concluding that the officer violated the Fourth Amendment when he ordered Blier to leave his house in order to complete a traffic stop. We agree and vacate the order suppressing the evidence.

I.  BACKGROUND

[¶2]  On June 26, 2015, the State charged Blier by criminal complaint with operating under the influence (OUI) (Class D), 29-A M.R.S. 2411(1-A)(A), to which he pleaded not guilty.  Blier moved to suppress some of the evidence

against him, arguing that the State had unlawfully seized him without a warrant. In September of 2015, the court held a hearing on the motion.

[¶3] Viewing the evidence in the light most favorable to the court's order, the following facts articulated in the court's order are supported by the evidence presented at the suppression hearing. *See State v. Collier*, 2013 ME 44, ¶ 2, 66 A.3d 563. On June 14, 2015, at about 10:30 p.m., a police officer on patrol in Fort Kent observed a car with defective license plate lights traveling north on Market Street. The officer pulled onto Market Street, caught up with the car, and turned on the police cruiser's "wig wag" lights (flashing headlights) as the car turned onto North Perley Brook Road.[1] The officer continued to follow the car for about 860 feet, at which point the car turned into the driveway of a residence. The driver parked, exited the car, walked up a short flight of stairs, opened a screen door, entered an enclosed porch, and attempted to unlock the door to his house. As the officer followed the driver and entered the enclosed porch, the driver opened the door and stepped inside the house. The officer briefly spoke to the driver over the threshold through the open door, explaining that he was effecting a traffic stop due to

---

[1] Although he intended to engage the blue lights on top of the cruiser when he turned on the wig wag lights, the officer did not engage them until he was in Blier's driveway. The officer did not engage the cruiser's siren at any point.

defective license plate lights. He told the driver that "he needed" to come outside to retrieve his license, registration, and proof of insurance. The driver then walked to his car to retrieve the requested documentation. Standing over the driver as he retrieved his documents—which identified him as Blier—the officer detected the smell of alcohol and decided to conduct field sobriety tests. Based on his performance on those tests, the officer arrested Blier for OUI.

[¶4] Seven months after the hearing, on April 29, 2016, the court granted Blier's motion to suppress, concluding that (1) although the officer had a reasonable, articulable suspicion to make a traffic stop for the defective license plate lights, the officer did not have probable cause to suspect any criminal activity, and no exigent circumstances existed when he ordered Blier to exit his house; (2) because Blier would not have believed he was free to disregard the officer's order to come outside, the verbal order amounted to an unlawful seizure of Blier; and (3) because all evidence of Blier's OUI arose after that seizure, it must be suppressed.

[¶5] The State moved the court to reconsider and for further findings of fact and conclusions of law. On August 15, 2016, the court denied the motion to reconsider and further found that the officer had a reasonable, articulable

4

suspicion of a civil traffic violation, sufficient for an investigatory traffic stop but not sufficient to seize Blier across the threshold of his house; that although the officer believed that Blier was refusing to stop for or fleeing from him, that belief was not objectively reasonable, and so there was no probable cause to believe that a crime had been committed; that Blier had not exhibited any furtive behavior; and that the officer's pursuit of Blier was not a "hot" one based on video evidence that the officer did not leave his car to follow Blier for at least seven seconds. The State timely appealed pursuant to 15 M.R.S. § 2115-A (2016) and M.R. App. P. 21(b).[2]

## II. DISCUSSION

[¶6] The motion court determined that the officer unlawfully seized Blier across the threshold of his house in what amounted to a de facto arrest because the officer did not have probable cause to believe that Blier had engaged in any criminal activity. Because we conclude that the officer had probable cause to arrest Blier for refusing to stop for a law enforcement

---

[2] The State's notice of appeal—which indicated that it filed the appeal "in anticipation of the receipt of the Attorney General's written approval"—did not strictly comply with statutory requirements because it neglected to either include the written approval of the Attorney General or to state "that the Attorney General has orally stated that the approval will be granted." 15 M.R.S. § 2115-A(5) (2016). We urge the State to be more diligent in its compliance with section 2115-A and Maine's Rules of Appellate Procedure. However, we decline to dismiss the appeal because the Attorney General had, in fact, given written approval two days before the filing of the appeal and because section 2115-A requires us to liberally construe its provisions. *See* 15 M.R.S. § 2115-A(6).

officer, we vacate the suppression order. 29-A M.R.S. § 2414(2) (2016); *see also* 17-A M.R.S. § 751-B(1)(A) (2016).

[¶7] When an appellant challenges a court's order on a motion to suppress, we review the factual findings of the motion court for clear error and "the application of those facts to constitutional protections . . . de novo." *State v. Bailey*, 2012 ME 55, ¶ 12, 41 A.3d 535 (quotation marks omitted). Here, because the suppression order "is based primarily on undisputed facts," we review it de novo as a legal conclusion. *Id.*

[¶8] The Fourth Amendment to the United States Constitution protects citizens "from unreasonable intrusions of police officers and other government agents," *State v. Dominique*, 2008 ME 180, ¶ 24, 960 A.2d 1160 (quotation marks omitted), including unlawful arrest, *see State v. Langlois*, 2005 ME 3, ¶ 8, 863 A.2d 913.[3] When a police officer makes an investigative stop, he or she "must have, at the time of the stop, an articulable suspicion that criminal conduct has taken place, is occurring, or imminently will occur, and the officer's assessment of the existence of specific and articulable facts sufficient to warrant the stop must be objectively reasonable in the totality of the circumstances." *State v. Donatelli*, 2010 ME 43, ¶ 11, 995 A.2d 238

---

[3] Article I, section 5 of the Maine Constitution provides the same protections as the Fourth Amendment. *State v. Gulick*, 2000 ME 170, ¶ 9 n.3, 759 A.2d 1085.

6

(alterations omitted) (quotation marks omitted). When an investigating officer's actions during the stop "exceed what is necessary to dispel the suspicion that justified the stop, the detention may amount to an arrest and is lawful only if it is supported by probable cause." *Id.* ¶ 12 (quotation marks omitted). Here, we need not determine whether the investigative stop became a de facto arrest because we conclude that the officer had probable cause to arrest Blier. *See State v. Flint*, 2011 ME 20, ¶ 9, 12 A.3d 54.

[¶9] "Probable cause exists where facts and circumstances within the knowledge of the officers and of which they have reasonably trustworthy information would warrant a prudent and cautious person to believe that the arrestee did commit or is committing the felonious offense." *State v. Lagasse*, 2016 ME 158, ¶ 13, 149 A.3d 1153 (quotations marks omitted). The probable cause standard is an objective one and presents "a very low threshold." *Id.* ¶ 14 (quotations marks omitted); *see Flint*, 2011 ME 20, ¶ 12, 12 A.3d 54 ("[I]t is the objective view of the circumstances that matters; the arresting officer's subjective belief regarding whether probable cause exists is not determinative.").

[¶10] Here, viewing the facts as found by the motion court objectively, probable cause to arrest Blier existed because the officer had personal

knowledge of facts that would lead a prudent and cautious officer to believe that Blier was refusing "to stop [his] motor vehicle on request or signal of a uniformed law enforcement officer." 29-A M.R.S. § 2414(2) (defining the Class E crime of "[f]ailure to stop"); 29-A M.R.S. § 2414(1)(B) (defining "[s]ignal" to include "flashing emergency lights"). Blier did not pull over despite being followed by a police cruiser with flashing headlights. Blier also got out of his car and attempted to enter his house notwithstanding the fact that a police cruiser with flashing headlights was parked behind him in the driveway.

[¶11] Because the police officer had probable cause to arrest Blier for the Class E crime of failure to stop, and pursued him "immediate[ly] and fairly continuous[ly] from the scene of the crime" into the curtilage of his home, *State v. Pease*, 520 A.2d 698, 700 (Me. 1987), his seizure of Blier did not amount to an unlawful seizure or arrest.

The entry is:

> Order of suppression vacated. Remanded for
> further proceedings.

Todd R. Collins, District Attorney (orally), 8th Prosecutorial District, Caribou, for appellant State of Maine

Neil J. Prendergast, Esq. (orally), Fort Kent, for appellee Dale E. Blier

Fort Kent District Court docket number CR-2015-127
FOR CLERK REFERENCE ONLY