STATE OF MAINE                                SUPERIOR COURT
KENNEBEC, ss.                                 DKT. NO. AP-20-19

STEPHEN T. WITHAM,                    )
                                      )
        Petitioner,                   )
                                      )
v.                                    )       **ORDER ON PETITIONER'S RULE**
                                      )       **80C APPEAL**
BOARD OF TRUSTEES FOR THE             )
MAINE CRIMINAL JUSTICE                )
ACADEMY,[1]                           )
                                      )
        Respondent.                   )

Petitioner Stephen T. Witham appeals pursuant to Rule 80C from Respondent Board of

Trustees of the Maine Criminal Justice Academy's (the "Board") March 16, 2020 decision

adopting a hearing officer's recommended decision and revoking of his law enforcement officer

certification. Mr. Witham raises several issues in this appeal. The Court has reviewed the parties'

briefs, the record on appeal, and the law relevant to this case. The Court affirms the Board's

decision.

## FACTUAL BACKGROUND

The following facts are drawn from the certified record filed with the Court.

Mr. Witham completed the Basic Law Enforcement Training Program in May 2014 and

started working as a deputy for the Oxford County Sheriff's Office ("OCSO") on June 1, 2014.

(R. 120.)

On March 17, 2016, Mr. Witham and his fellow OCSO deputy, Matthew McDonnell, had

a day off duty which they spent together. (R. 133-34, 140.) Mr. Witham carried his service

weapon – a Sig Sauer P229 – with him that day. (R. 140.) The gun did not have a safety switch

---

[1] The Court uses the caption provided by Petitioner, though the statute refers to the Board as the "Board of Trustees of the Maine Criminal Justice Academy." 25 M.R.S. § 2801-A(1).

1

and Mr. Witham was carrying it tucked into the back of his pants while loaded with a round chambered. (R. 140, 210.) Mr. McDonnell was not carrying his because he knew he would be drinking at an establishment that day. (R. 229.) Sometime in the late morning or early afternoon of March 17, 2016, Mr. Witham and Mr. McDonnell began drinking beer and Wild Turkey whiskey at Mr. McDonnell's house. (R. 134, 138-39, 205, 227.) Mr. Witham and Mr. McDonnell continued drinking at multiple locations throughout the day, including a Chinese restaurant at which they had a "scorpion something" that allegedly was a mixture of several different types of liquor. (R. 229.)

That evening the two met Mr. McDonnell's mother, Michele McDonnell, and her boyfriend, Ken Cole, at the Rustic Tavern in West Paris around 5 or 6 in the evening.[2] (R. 235.) By the time they arrived at the Rustic Tavern, Mr. Witham and Mr. McDonnell had consumed approximately 8-10 drinks and proceeded to drink 2-3 more at the Rustic Tavern over the course of the 2-3 hours they were there.[3] (R. 206-07, 209, 227.) Ms. McDonnell noted that Mr. Witham's eyes were red and he "was just a lot more friendly [and] talkative." (R. 240.) At one point in the evening, Mr. Witham tried to hug Ms. McDonnell, lost his balance, knocked over the table they were sitting at, and sent the contents of the table flying all over the floor. (R. 146, 207-08, 237-39.) The group then decided to leave, though Mr. McDonnell "figured it wasn't a good idea for [Mr. Witham] to drive home" because Mr. Witham was "more than likely" over the limit for

---

[2] At the administrative hearing, Petitioner stipulated to being in possession of a firearm and the Rustic Tavern being a "licensed establishment" within the meaning of 17-A M.R.S § 1057(1)(B). (R. 103-04.) Thus, the only issue up for determination was whether it was more likely than not that Mr. Witham was under the influence while he was at the Rustic Tavern.

[3] Mr. McDonnell testified that he and Mr. Witham drank at about the same pace. (R. 206.)

driving.[4] (R. 208-10.) Mr. McDonnell convinced Mr. Witham to leave his truck at the Rustic Tavern. (R. 211.) Ms. McDonnell gave Mr. Witham a ride home. (R. 211, 241.) She believed "that Mr. Witham at that time had had too much to safely drive home." (R. 241.) Mr. Witham conceded it was "fair to say" that he was operating at less than 100% of his physical and mental capability by the end of the day. (R. 144-45.)

After Ms. McDonnell dropped him off at home after being at the Rustic Tavern, Mr. Witham sustained a serious injury to his pinky finger that required a trip to the emergency room and surgery. (R. 135-36.) He was struggling to get into his home, and he believed – but was not sure – that his firearm may have discharged. (R. 151.) Mr. Witham believed it was possible that his firearm may have caused the injury to his finger, but he did not know for sure. (R. 185.) It was also possible that he injured it in an accident that night with his garage door. (R. 186.) In fact, the emergency room physician did not believe it was a gunshot wound and wondered if it was caused by catching the finger in the track of the garage door. (R. 193-94.) No shell casings were found in the area around the garage. (R. 194-95.)

Over two years later, in 2018, the OCSO investigated the incident. This eventually resulted in Mr. Witham's termination from the OCSO, though the County Commissioners disapproved the recommended termination and Mr. Witham instead resigned. (R. 152, 155.) Due to this, the Board initiated a complaint against Mr. Witham's certificate of eligibility. (R. 21.) On May 10, 2019, the Board voted to revoke Mr. Witham's certificate. (R. 68-69.) Mr. Witham requested a hearing,

---

[4] Notably, Mr. McDonnell received training at the Maine Criminal Justice Academy on recognizing when people were under the influence of alcohol. (R. 203.) He testified it was about "how to detect . . . things like red face, bloodshot eyes, odor, unsteady on the feet, things like that," though he conceded he would not be confident about his determination whether someone was under the influence in the absence of field sobriety tests or chemical tests. (R. 203, 224.) He even testified that he "would say so" in response to a question about whether he had a high level of confidence regarding his recollection presented via his testimony, including saying it "more likely than not" happened as he relayed the event. (R. 213.)

3

which was ultimately held on October 30, 2019, before a hearing officer appointed by the Board to conduct the hearing. (R. 2, 16-17.)

Following the hearing, the hearing officer issued a recommended decision in which she found that the evidence supported a finding that Mr. Witham was under the influence "far in excess of the preponderance required" while at the Rustic Tavern. (R. 12.) She recommended that the Board revoke Mr. Witham's certificate of eligibility to serve as a law enforcement officer. (R. 13-14.) On January 21, 2020, the Board's Executive Director sent the hearing officer's recommended decision to the parties and informed the parties of their ability to submit comments on the recommended decision pursuant to 5 M.R.S. § 9062(2). (R. 606.) Mr. Witham submitted extensive comments on the recommended decision. (R. 620-41.) The AAG representing the Board also submitted comments. (R. 642-43.) The hearing officer responded to those comments and incorporated some changes into the final version of the recommended decision. (R. 2-14, 644.) The Board adopted the recommended decision on March 16, 2020. (R. 1.) Mr. Witham filed a Rule 80C appeal to this Court on April 13, 2020.

## STANDARD OF REVIEW

The Court reviews the agency's decision "for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Carryl v. Dep't of Corr.*, 2019 ME 114, ¶ 5, 212 A.3d 336 (quotation marks omitted). "As the party seeking to overturn the agency's decision, [Mr. Witham] bears the burden of proof to demonstrate that no competent evidence supports the Board's decision." *Stein v. Me. Criminal Justice Acad.*, 2014 ME 82, ¶ 11, 95 A.3d 612. "Issues of law . . . are reviewed de novo." *Town of Eddington v. Emera Maine*, 2017 ME 225, ¶ 15, 174 A.3d 321. Because the Board's decision to suspend or revoke Mr. Witham's certificate of eligibility is discretionary, Mr. Witham has the burden of demonstrating that the Board abused its

4

discretion. *Stein*, 2014 ME 82, ¶ 23, 95 A.3d 612. It is an abuse of discretion when the appealing party shows that "the decisionmaker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law. It is not sufficient to demonstrate that, on the facts of the case, the decisionmaker could have made choices more acceptable to the appellant or even to a reviewing court." *Id.* (citations and quotation marks omitted).

As it pertains to factual determinations, the Court's review is limited to a determination of whether the facts found are supported by "substantial evidence." *Friedman v. Pub. Utils. Comm'n*, 2016 ME 19, ¶ 10, 132 A.3d 183. The substantial evidence standard of review is equated to the clear error standard used in review of fact-findings by a trial court. *Emera Maine*, 2017 ME 225, ¶ 14, 174 A.3d 321. "As the fact-finder, the Board has the authority to determine the weight to be given to the evidence . . . ." *Rossignol v. Me. Pub. Emps. Ret. Sys.*, 2016 ME 115, ¶ 6, 144 A.3d 1175. The Court "must affirm findings of fact if they are supported by any competent evidence in the record even if the record contains inconsistent evidence or evidence contrary to the result reached by the Board." *Beal v. Town of Stockton Springs*, 2017 ME 6, ¶ 26, 153 A.3d 768 (alterations and quotation marks omitted).

## DISCUSSION

1. Relevant law.

"The board may take action against any . . . certificate holder . . . including, but not limited to, a decision to impose a civil penalty or to refuse to issue a certificate or to modify, suspend or revoke a certificate for . . . [e]ngaging in conduct that is prohibited or penalized by state law as . . . a . . . Class D crime . . . ." 25 M.R.S. § 2806-A(5)(F). Criminal possession of a firearm – the conduct that Mr. Witham was alleged to have engaged in – is a Class D crime. 17-A M.R.S. §

5

1057(6). As is relevant here, a "person is guilty of criminal possession of a firearm if . . . [,] [w]hile under the influence of intoxicating liquor or drugs or a combination of liquor and drugs or with an excessive alcohol level, the person possesses a firearm in a licensed establishment." *Id.* § 1057(1)(B). The only issue for decision before the agency was whether it was more likely than not that Mr. Witham was under the influence of alcohol at the Rustic Tavern on March 17, 2016.

> For purposes of this section, "under the influence of intoxicating liquor or drugs or a combination of liquor and drugs or with an excessive alcohol level" has the same meaning as "under the influence of intoxicants" as defined in Title 29-A, section 2401, subsection 13. "Excessive alcohol level" means an alcohol level of 0.08 grams or more of alcohol per 100 milliliters of blood or 210 liters of breath. Standards, tests and procedures applicable in determining whether a person is under the influence or has an excessive alcohol level within the meaning of this section are those applicable pursuant to Title 29-A, sections 2411 and 2431

*Id.* §1057(5). In the context of motor vehicle operation, a "driver commits the offense of operating under the influence if that individual's mental or physical faculties are impaired, however slightly or to any extent."[5] *State v. Flint*, 2011 ME 20, ¶ 11, 12 A.3d 54 (quotation marks omitted).

2. Section 1057(5) and factual findings regarding "under the influence."

Mr. Witham contends the hearing officer committed legal error by not interpreting section 1057(5) to require only evidence of the same "[s]tandards, tests and procedures applicable in determining whether a person is under the influence or has an excessive alcohol level" under the motor vehicle code in order to prove it was more likely than not that Mr. Witham was under the influence on March 17, 2016. 17-A M.R.S. § 1057(5). The Court does not agree with Mr. Witham's interpretation that section 1057(5) is a limit on the type of evidence that can be used to prove an individual is under the influence for purposes of section 1057(1)(B). Mr. Witham's

---

[5] As the criminal-possession-of-a-firearm statute directs consideration of "under the influence" to the motor vehicle code, this standard is equally relevant here.

6

argument would be much more persuasive if the statute read, "*only* the standards, tests and procedures that are applicable in determining whether a person is under the influence or has an excessive alcohol level pursuant to Title 29-A, sections 2411 and 2431, are applicable to prove that a person is under the influence or has an excessive alcohol level within the meaning of this section." However, it does not read as such.

Instead, it states that those same standards, tests, and procedures are applicable, but does not limit the type of evidence that would otherwise be admissible to prove someone was under the influence. It says nothing about prohibiting other evidence, such as admissions of the individual and witness observations of that individual, that might indicate one's "mental or physical faculties are impaired, however slightly or to any extent."[6] *Flint*, 2011 ME 20, ¶ 11, 12 A.3d 54 (quotation marks omitted). The Court finds Respondent's citation to *State v. Atkins* to be illuminating. 2015 ME 162, 129 A.3d 952.

In *Atkins*, the defendant was charged with operating under the influence of intoxicants (in that case, apparently THC). *Id.* ¶¶ 1, 3. The law enforcement officer who stopped Atkins was not a certified drug recognition expert. *Id.* ¶ 6. In other words, the officer there was more akin to a nonexpert officer or layperson who offered testimony of observations about Atkins's alleged

---

[6] As Respondent suggests, Mr. Witham's interpretation of the statute would lead to absurd or illogical results, something the Legislature could hardly have intended. *Cf. Fortin v. Titcomb*, 2013 ME 14, ¶ 14, 60 A.3d 765 (quotation marks omitted) ("We interpret a statute to avoid absurd, illogical, or inconsistent results.").

> Under Witham's construction of the statute . . . , an individual who is witnessed to possess a firearm in a bar, to consume large quantities of alcohol, and to exhibit signs of intoxication (red eyes, slurred speech, incoherent statements, loss of motor skills, stumbling, disorientation, vomiting, passing out, and uncontrolled urination and defecation), but whose friends are able to drag him away before the police arrive to administer him a blood or breath test [or conduct field sobriety testing], would be immune from subsequent prosecution.

(Resp't's Br. 16.)

intoxication. Similar to Mr. Witham's citation to 17-A M.R.S. § 1057(5) here, Atkins contended only testimony of a drug recognition expert, pursuant to 29-A M.R.S. § 2525 and 2526, could be used to prove Atkins was under the influence of drugs. *Atkins*, 2015 ME 162, ¶ 14, 129 A.3d 952. The Law Court disagreed:

> [i]n addressing the admissibility of the results of a drug recognition expert's tests, subsection 2 does not, directly or by implication, prohibit testimony by any person reporting observations of impairment. Thus, sections 2525 and 2526 do not bar a nonexpert officer, or even a layperson, from testifying to his or her observations of a driver's impairment or the conduct and results of a field sobriety test.

*Id.* ¶¶ 15-16.

Comparably, the Law Court then highlighted that such testimony by a nonexpert officer or layperson about an individual's impairment might carry less weight but that such determination was within the exclusive province of the factfinder. *Id.* ¶ 17. That rationale is equally applicable here. *See Rossignol*, 2016 ME 115, ¶ 6, 144 A.3d 1175 (citing 5 M.R.S. § 11007(3)) ("As the factfinder, the Board has the authority to determine the weight to be given to the evidence, and we will not substitute our judgment for the Board's."). As such, 17-A M.R.S. § 1057(5) does not limit the type of evidence that can be admissible to prove an individual is under the influence, and the weight to give to a nonexpert or layperson's testimony in such a case is within the province of the factfinder, here the hearing officer and then the Board. In this case, there is substantial evidence (even independent of the OCSO investigative report of the incident discussed in footnote 9, *infra*) supporting the finding that it was more likely than not that Mr. Witham was under the influence when he was at the Rustic Tavern on March 17, 2016.

Sometime in the late morning or early afternoon of March 17, 2016, Mr. Witham and Mr. McDonnell started drinking beer and Wild Turkey whiskey at Mr. McDonnell's house. (R. 134,

8

138-39, 205, 227.) Mr. Witham conceded that, around that time, he had a "drinking issue" for which he "was consuming more than [he] should" and "it was starting to interfere with [his] life," including "this overall incident . . . ." (R. 137-38.) Mr. Witham and Mr. McDonnell continued drinking at multiple locations throughout the day including a Chinese restaurant at which they had a "scorpion something" that allegedly was a mixture of several different types of liquor. (R. 229.)

That evening, the two met Mr. McDonnell's mother and her boyfriend at the Rustic Tavern in West Paris around 5 or 6 in the evening. (R. 235.) By the time they arrived at the Rustic Tavern, Mr. Witham and Mr. McDonnell had consumed approximately 8-10 drinks and proceeded to drink 2-3 more at the Rustic Tavern while they were there for 2 to 3 more hours. (R. 206-07, 209, 227.) When Mr. McDonnell was asked whether Mr. Witham was impaired to any degree by alcohol consumption, Mr. McDonnell stated that he "would say so" because "anybody that would consume that much throughout the day would be impaired to the slightest degree."[7] (R. 208-09.) At one point, Mr. Witham tried to hug Ms. McDonnell, lost his balance, knocked over the table they were sitting at, and sent the contents of the table flying all over the floor. (R. 146, 207-08, 237-39.) The group then decided to leave, though Mr. McDonnell "figured it wasn't a good idea for [Mr. Witham] to drive home" because Mr. Witham was "more than likely" over the limit for driving. (R. 208-10.) Ms. McDonnell gave Mr. Witham a ride home. (R. 211, 241.) She believed "that

---

[7] Mr. Witham points to the Board's expert's testimony that a law enforcement officer relies on sight, hearing, and smell when considering the totality of the circumstances during an OUI investigation in order to highlight that there was no contemporaneous police investigation. (Pet'r's Br. 4.) While Mr. McDonnell may not have been acting in his official capacity as a law enforcement officer, it is hardly unreasonable to believe that he would still retain his general knowledge of making OUI-related observations when he was off duty on March 17, 2016. Moreover, Mr. McDonnell had firsthand detail regarding Mr. Witham's consumption of alcoholic beverages, something that infrequently occurs in standard OUI investigations or prosecutions. The Court cannot say that Mr. McDonnell's testimony is not "the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." 5 M.R.S. § 9057(2). Moreover, the Board's expert did not agree with the assertion that only a trained police officer could determine whether someone was under the influence; instead, the Board's expert stated that a common layperson could make such a determination. (R. 264.)

9

Mr. Witham at that time had had too much to safely drive home." (R. 241.) Mr. Witham conceded it was "fair to say" that he was operating at less than 100% of his physical and mental capability by the end of the day. (R. 144-45.)

The Court has not recited all of the evidence in the record supporting the Board's finding that it was more likely than not that Mr. Witham was under the influence of alcohol at the Rustic Tavern on March 17, 2016, but suffice it to say that the finding was supported by substantial evidence in the record. Mr. Witham's counsel has zealously advocated for his client both before the Board and before this Court in an attempt to show the decision was not supported by competent evidence in the record, including by providing intricate detail on uncertainty surrounding the testimony at the hearing. (*See, e.g.*, R. 445-605.) Despite this, the hearing officer (and then the Board) was permitted to decide the facts the way she did even if there was inconsistent evidence or evidence contrary to the decision in the record. *See Passadumkeag Mountain Friends v. Bd. of Environmental Prot.*, 2014 ME 116, ¶¶ 12, 14, 102 A.3d 1181.

Most fundamentally, the Court emphasizes that the Board did not need to be convinced beyond all reasonable doubt that Mr. Witham was under the influence of alcohol while at the Rustic Tavern. Instead, the Board needed only to conclude it was *more likely than not* that he was under the influence at the Rustic Tavern.[8] Mr. Witham's appeal desires exacting precision from the evidence the Board relied on when it found he was under the influence at the Rustic Tavern on

_____

[8] In contrast, for example, Mr. Witham highlights that "[t]here was a lack of *definitive evidence* about the frequency, amount and timing of his alcohol consumption"; that the Board failed to "account for key metabolization factors [which] underlines the unreliability of its conclusions that Mr. Witham *was* 'under the influence'"; and that "[i]t is essential to consider metabolization factors to make a fair legal determination of whether a person *was* 'under the influence' of alcohol at a particular point in time." (Pet'r's Br. 4-5 (emphases added).) The issue before the Board was not whether Mr. Witham *was*, in fact, under the influence of alcohol. Rather, the issue before the Board was whether it was *more likely than not* that Mr. Witham was under the influence of alcohol at the Rustic Tavern on March 17, 2016.

March 17, 2016, but such exacting precision is simply not required. The Court denies Mr. Witham's appeal on these points.[9]

3. Abuse of discretion.

Mr. Witham contends the Board abused its discretion when it revoked Mr. Witham's certificate because revocation was beyond "the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law." *Stein*, 2014 ME 82, ¶ 23, 95 A.3d 612 (quotation marks omitted). This is particularly so, Mr. Witham contends, because the Board rejected Mr. Witham's commendable efforts to correct an alcohol problem and because the Board has so infrequently revoked law enforcement officer certificates in cases of motor vehicle OUI. (Pet'r's Br. 17-18.)

However, the recommended decision adopted by the Board expressly acknowledged that while Mr. Witham's "efforts to voluntarily address his alcohol problem are laudatory, [Mr. Witham] did not fully accept responsibility for his actions on March 17, 2016, at the hearing . . . [by] essentially defer[ing] questions regarding his level of intoxication and incapacitation."[10] (R.

---

[9] During the proceedings below, Mr. Witham objected to the use of information from the Sheriff's Office's investigative report on the incident in question because it was confidential under 30-A M.R.S. § 503. (*E.g.,* R. 622.) The hearing officer stated that Mr. Witham did not object to the admission of the report itself, but instead argued it should be given no weight because it was confidential information under the aforementioned statute. (R. 3 n.2.) The hearing officer then concluded that the statute in question did "not prohibit the consideration of the Sheriff's Office's Investigation Report once admitted. Although information from Prosecution Exhibit #2 is relied upon in support of several factual findings, the conclusions in the Recommended Decision are supported by the great weight of the evidence, even if Prosecution Exhibit #2 were not considered." (R. 3 n.2.) Mr. Witham does not appear to explicitly press his argument on appeal that the report should not have been relied on due to it being statutorily confidential information, though it implicitly seems he believes it still should not be considered because he does not cite to admissions he made during that investigation. In any event, the Court agrees with the hearing officer that the great weight of evidence beyond the investigative report supports the conclusion that it was more likely than not that Mr. Witham was under the influence at the Rustic Tavern. Thus, the Court has set the issue of the admissions contained in the OCSO report aside and has focused on other evidence in the record that nonetheless supports the finding that Mr. Witham was more likely than not under the influence.

[10] The record supports this. (R. 186-87.)

11

13.) The recommended decision did not reject the mitigating circumstances but instead determined they were insufficient to overcome other factors. *See Rossignol*, 2016 ME 115, ¶ 6, 144 A.3d 1175 ("As the fact-finder, the Board has the authority to determine the weight to be given to the evidence . . . ."). Further, the hearing officer highlighted why she believed revocation was an appropriate sanction:

> although [Mr. Witham's] injury to his finger at the end of the evening was serious, the outcome of his actions at the Rustic Grill and Tavern could have been far more serious. Being intoxicated to the point of knocking over a table and pushing a companion to the ground, resulting in his firearm being visible during the incident, is extremely serious. . . . The fact that these events occurred in a public setting makes them all the more serious. And finally, the fact that [Mr. Witham] believes that he accidentally discharged his weapon a short time later underscores the fact that he could have discharged his weapon accidentally while in the public setting.

(R. 13.) For the reasons highlighted by the hearing officer, the fact that the Board may not have revoked certificates in most motor vehicle OUI cases is not sufficient to demonstrate that revocation was beyond the bounds of the reasonable choices available to the Board under the facts and circumstances of this case. Mr. Witham has not shown an abuse of discretion. The Court denies the appeal on this ground.[11]

---

[11] Though it appears under a heading of "abuse of discretion" in his brief, Mr. Witham frames this argument in the context of due process. He has not established that – by revoking his certificate for the conduct at issue – the Board "engage[d] in conduct that shocks the conscience and violates the decencies of civilized conduct." *LeGrand v. York Cnty. Judge of Prob.*, 2017 ME 167, ¶ 38, 168 A.3d 783 (alterations, citations, and quotation marks omitted). Related to the argument discussed above, Petitioner also contends the Board violated due process when it "issued a perfunctory, one-page, templated Final Decision adopting the Recommended Decision without any reconciliation of the competing arguments on the merits of the sanction." (Pet'r's Br. 16.) However, the Board expressly adopted the hearing officer's recommended decision. (R. 1.) In other words, the hearing officer's recommended decision became the Board's final decision; the hearing officer's recommended decision was extensive and went into great detail on why revocation was merited. The use of a hearing officer to prepare a recommended decision is permitted by the Maine Administrative Procedure Act, 5 M.R.S. § 9062(4), and the Board is permitted to approve the recommended findings and sanction, 25 M.R.S. § 2806-A(4)(C). The Court is not persuaded by Mr. Witham's argument.

4. Due process.

Mr. Witham raises both procedural due process and substantive due process grounds as bases for vacating or reversing the Board's decision. "The due process clauses of the Maine and federal Constitutions guarantee due process before a government entity deprives any person of a property right." *Beal*, 2017 ME 6, ¶ 15, 153 A.3d 768 (citing U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *In re A. M.*, 2012 ME 118, ¶ 15, 55 A.3d 463 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

On the procedural due process argument, Mr. Witham contends "he had a right to be heard before the Board made its final decision" in order to rebut the hearing officer's recommended decision. Mr. Witham has not directed the Court to the denial in the record because, as the parties discussed at the hearing before the Court, the email denying the request is not in the record.[12] Nonetheless, the Court acknowledges there is no question that Mr. Witham was entitled to due process generally before the Board could revoke his certification to engage in his profession; he undoubtedly was. *See N. Atl. Sec., LLC v. Office of Sec.*, 2014 ME 67, ¶ 40, 92 A.3d 335. The question is whether he was afforded all the process due under the circumstances. Mr. Witham has

---

[12] Mr. Witham contends as part of this argument that, on March 12, 2020, the Board denied his request to present a rebuttal of the recommended decision before the Board began its deliberations on advice of "legal counsel" that additional presentations did not need to be allowed. (Pet'r's Br. 2, 14-15.) As noted above, this does not appear in the record. Mr. Witham argues that the "legal counsel" who advised the Board was also the same attorney prosecuting the case before the Board which created an appearance of "confirmation bias." (Pet'r's Br. 15 (citing *Howitt v. Superior Court*, 3 Cal. App. 4th 1575, 1586 (1992)).) The Court is not in a position to say whether this was a violation of due process. The Court has no way of knowing as fact whether "legal counsel" was, in fact, the same attorney prosecuting the case before the Board because this information is not contained in the record. Respondent represented to the Court at hearing that the "legal counsel" referenced was the hearing officer, who was hired by the Board to conduct the hearing. At the February 22, 2021 hearing before the Court, the Court offered Respondent chance to address this issue in writing because it referenced material outside the record, and it also offered Mr. Witham a chance to respond to that. The Court's docket has no record of any document being filed since the February 22, 2021 hearing.

not provided the Court with authority suggesting that he is entitled to an additional opportunity to be heard before the Board could revoke his certificate. The Court does not find this argument persuasive. *Cf. Opp Cotton Mills, Inc. v. Adm'r of Wage & Hour Div.*, 312 U.S. 126, 152-53 (1941) ("The demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective."). The Court denies this aspect of Mr. Witham's appeal.

## CONCLUSION

As the Court has detailed, the Board's decision to revoke Mr. Witham's certificate to serve as a law enforcement officer must be affirmed. The Board did not commit legal error. Nor was there an abuse of discretion or a denial of procedural or substantive due process. Finally, substantial evidence in the record supports the Board's findings and ultimate decision.

The entry is:

1. Petitioner Stephen T. Witham's appeal is **DENIED** and The Board of Trustees of the Maine Criminal Justice Academy's decision in MCJA Case No. 2018-022 is **AFFIRMED**.
2. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 5 24 2021

Hon. M. Michaela Murphy
Justice, Maine Superior Court

14

**J. Murphy     F**

Action:80C             MR/GL#242-21

Stephen T. Witham              vs              Board of Trustees for the Maine
                                               Criminal Justice Academy

---

Plaintiff's Attorney                           Defendant's Attorney

Michael Cunniff, Esq.                          Andrew Black, AAG
12 City Center                                 6 State House Station
Portland, ME 04101                             Augusta, ME 04333-0006

Date of Entry

---

| | |
|---|---|
| 04/17/20 | Petition for Review of Final Agency Action, filed (4/13/20). s/Cunniff, Esq. |
| 04/27/20 | Entry of Appearance, filed (4/24/20). s/Black, AAG |
| 06/08/20 | Certification of Record of Proceedings, filed. s/Black, AAG |
| 06/09/20 | Notice and Briefing Schedule issued.<br>Copies sent to Parties/Counsel. |
| 07/17/20 | Petitioner's Brief, filed (07/16/20). s/Cunniff,Esq. |
| 08/13/20 | Respondent's Brief, filed. s/Black, AAG |
| 08/25/20 | Petitioner's Reply Brief, filed (8/24/20). s/Cunniff, Esq. |
| 02/12/21 | Hearing scheduled February 22,2021 at 9:30 a.m.<br>Notice sent to Parties/Counsel |
| 02/18/21 | Amended Zoom link emailed to parties. |
| 03/02/21 | Oral Arguments via ZOOM held, 02/22/21. |
| 05/03/21 | Oral Arguments, held (2/22/21) |
| 05/25/21 | Order,(05/24/21). s/ Murphy, J<br>Decision, Order of Petitioner's Rule 80C Appeal.<br>1. Petitioner Stephen T Witham's appeal is DENIED and The Board of Trustees of The Maine Criminal Justice Academy's decision in MCJA Case No. 2018-022 is AFFIRMED.<br>Copies sent to Parties/Counsel<br>Copies sent to Repositories |
| 05/25/21 | Case Closed |