MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2018 ME 108
Docket:       Ken-17-523
Submitted
  On Briefs:  June 27, 2018
Decided:      July 26, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

ROWE L. PALMER

HJELM, J.

[¶1]  Rowe L. Palmer appeals from a judgment entered by the trial court (Kennebec County, *E. Walker, J.*) after a jury trial, convicting him of aggravated operating under the influence (Class C), 29-A M.R.S. § 2411(1-A)(D)(1) (2017), and aggravated assault (Class B), 17-A M.R.S. § 208(1)(A) (2017).  Palmer argues that the court (*Mullen, D.C.J.*) erred by denying part of his motion to suppress evidence of his alcohol level determined from a sample of his blood that was seized without a warrant.  Because the court did not err by concluding that probable cause existed and exigent circumstances justified the warrantless blood draw, we affirm the judgment.

## I. BACKGROUND

[¶2]  The motion court found the following facts that are supported by competent evidence presented at the suppression hearing.  *State v. Turner*, 2017 ME 185, ¶ 2, 169 A.3d 931.

[¶3]  At approximately 4:00 p.m. on January 4, 2016, while traveling in Chelsea, Palmer drove a truck across the centerline of the road in a posted 45-mile-per-hour zone.  Palmer's truck collided head-on with an oncoming vehicle.  That other vehicle came to rest on its roof.  A deputy sheriff and other first responders were dispatched to the scene, where mechanical equipment was needed to extract the two occupants from the vehicle that Palmer struck. Palmer was pinned inside his vehicle with extensive injuries and had to be removed by rescue personnel.  Both occupants of the other vehicle were also injured.  One was taken to Central Maine Medical Center by medical helicopter, and the other occupant and Palmer were transported separately by ambulance to Maine General Medical Center.

[¶4]  While Palmer was being driven to the hospital by ambulance, a sample of his blood was taken with the use of a blood kit provided by law enforcement.[1]  Around 6:30 p.m., Deputy Sheriff Jacob Pierce was instructed to

---

[1]  A law enforcement officer requested this blood draw because he believed that death could possibly result from the collision.  *See* 29-A M.R.S. § 2522(1), (2) (2017) (requiring law enforcement

meet Palmer at the hospital. When Pierce arrived at the hospital, he saw Palmer and Palmer's wife in an examining room along with medical personnel. Following up on the blood draw taken in the ambulance, Pierce noticed that the blood kit used in the ambulance was expired. Pierce left the hospital to obtain an unexpired blood kit, and when he returned, a member of the hospital's medical staff told him that Palmer was about to go into surgery. Pierce informed the staff member that he needed a blood sample from Palmer.

[¶5] During Pierce's interactions with Palmer, he did not notice the smell of alcohol. While waiting for a member of the medical staff to arrive to take a blood sample, however, Pierce overheard Palmer tell his family that he had consumed "a few beers with lunch." Pierce told Palmer that he would need another blood draw and explained the reasons why the sample taken in the ambulance could not be used. Palmer did not refuse the request, but Pierce did not recall at the motion hearing asking for Palmer's consent, and Palmer was unable to sign a consent form because of injuries to his dominant hand. Pierce

---

to administer a blood test on the driver of a motor vehicle involved in a collision for which there is probable cause to believe that death has occurred or will occur as a result of that collision). The court suppressed the results of this blood draw because Palmer did not consent to it and there was an insufficient basis for the officer to believe that death would occur as a result of the accident. Additionally, the court found that the State did not prove that Palmer consented to the blood draw at the hospital, which is the blood sample at issue here. The State does not challenge any of these determinations on appeal.

4

did not seek a search warrant because, due to Palmer's impending surgery, he

"needed to expedite the process." The motion hearing record shows that a

phlebotomist took a sample of Palmer's blood, which Pierce secured as part of

the investigation.

[¶6] Several months later, Palmer was charged by criminal complaint

with one count of aggravated criminal OUI (Class C), 29-A M.R.S.

§ 2411(1-A)(D)(1), that included an allegation that Palmer caused serious

bodily injury to another. Palmer was ultimately indicted for that charge and

one count of aggravated assault (Class B), 17-A M.R.S. § 208(1)(A), based on an

allegation that Palmer's conduct created a substantial risk of death or extended

convalescence necessary for the recovery of physical health. He pleaded not

guilty to each charge and filed a motion to suppress the evidence resulting from

the two blood draws. After holding a hearing on the motion, in an order issued

in November of 2016, the court (*Mullen, D.C.J.*) granted the motion to the extent

that it requested suppression of the evidence derived from the blood sample

taken in the ambulance, *see supra* n.1, but denied that part of the motion

relating to the blood draw at the hospital. The court found that there was

probable cause to support the seizure of a blood sample and that there were

exigent circumstances obviating the need for a warrant. The court made the following factual findings supporting the latter conclusion:

> [Palmer] had been involved in a serious motor vehicle accident involving serious injuries to three people. There was evidence that [Palmer] was responsible for the accident. [Palmer] stated that he had consumed alcohol earlier in the day. [Palmer] was about to go into surgery and the officer was told that the officer only had a few minutes because "[Palmer] needed surgery."

[¶7] A two-day jury trial was held in October of 2017, where Palmer was found guilty of both charges. The following month, the court sentenced Palmer on the aggravated assault charge to eight years' incarceration with all but three years suspended and a three-year period of probation, and he was ordered to pay restitution of approximately $8,700 to the occupants of the other vehicle involved in the collision. On the aggravated OUI charge, the court imposed a concurrent three-year prison term, a fine and assessments totaling $2,620, and a six-year motor vehicle license suspension. Palmer filed a timely notice of appeal. M.R. App. P. 2B(b).

## II. DISCUSSION

[¶8] Palmer asserts that Pierce did not have probable cause to obtain a sample of his blood and that exigent circumstances did not exist to justify the warrantless seizure. On an appeal from an order granting or denying a motion

to suppress, we review factual findings for clear error and issues of law de novo. *State v. Cote*, 2015 ME 78, ¶ 9, 118 A.3d 805.

[¶9] For more than fifty years, it has been established that "[t]he taking of a blood sample for purposes of chemical analysis to produce evidence is a search and seizure . . . ." *State v. Libby*, 453 A.2d 481, 484 (Me. 1982); *see Birchfield v. North Dakota*, 579 U.S. ---, 136 S. Ct. 2160, 2173-85 (2016); *Schmerber v. California*, 384 U.S. 757, 767 (1966); *State v. LeMeunier-Fitzgerald*, 2018 ME 85, ¶ 11, --- A.3d ---. Protections created by the Fourth Amendment require a search to be reasonable. U.S. Const. amend. IV. A search is reasonable for constitutional purposes only if it is authorized by a warrant or if an exception to the warrant requirement is present. *See id.*; *State v. Boyd*, 2017 ME 36, ¶ 8, 156 A.3d 748. One of those exceptions is the existence of exigent circumstances. *Id.* Thus, if a law enforcement officer has probable cause to believe that a driver is operating under the influence, *and* if exigent circumstances exist to justify a warrantless seizure of a sample of the operator's blood, a warrant is not required for the seizure. *See Libby*, 453 A.2d at 484. In other words, "probable cause and exigent circumstances justify the warrantless taking of a blood sample." *Id.* Here, Palmer challenges the court's

determinations of probable cause and exigent circumstances. We address each in turn.

A.      Probable Cause

[¶10]  The standard for probable cause is a familiar one: it exists where information allows a prudent and cautious person to believe that a crime was or is being committed. *State v. Lagasse*, 2016 ME 158, ¶ 13, 149 A.3d 1153. In the context of an OUI investigation, "an officer only needs evidence sufficient to support the reasonable belief 'that the person's senses are affected to the slightest degree, or to any extent, by the alcohol that person has had to drink.'" *State v. Forsyth*, 2002 ME 75, ¶ 14, 795 A.2d 66 (quoting *State v. Webster*, 2000 ME 115, ¶ 7, 754 A.2d 976). Information that contributes to a finding of probable cause includes the suspect's responsibility for a motor vehicle collision, *see State v. Baker*, 502 A.2d 489, 491-92 (Me. 1985), and "an admission by the driver that he had consumed alcohol," *see Turner v. Sec'y of State*, 2011 ME 22, ¶ 11, 12 A.3d 1188.

[¶11]   Here, the court was presented with evidence that a law enforcement officer who responded to the scene of the crash determined that it was caused by Palmer when he crossed over the centerline of a 45-mile-per-hour section of road and crashed into an oncoming vehicle.

Several hours later, Pierce heard Palmer admit to one or more family members at the hospital that he had consumed a few alcoholic beverages earlier in the day. Evidence of the collision that had no apparently benign explanation, combined with Palmer's admission to having consumed alcohol before the accident occurred, is sufficient to support the court's determination that, when Pierce obtained the blood sample at the hospital, there was probable cause to believe that Palmer had committed the crime of OUI. *See Turner*, 2011 ME 22, ¶ 11, 12 A.3d 1188; *Forsyth*, 2002 ME 75, ¶ 14, 795 A.2d 66; *Baker*, 502 A.2d at 491-92.

B.     Exigent Circumstances

[¶12]   We next turn to the question of whether there were exigent circumstances that justified the warrantless blood draw at the hospital. The State has the burden of proving "by a preponderance of the evidence that exigent circumstances excusing the warrant requirement existed." *State v. Arndt*, 2016 ME 31, ¶ 9, 133 A.3d 587. Exigent circumstances exist where the totality of the circumstances demonstrates that "there is a compelling need to conduct a search and insufficient time in which to secure a warrant." *Id*. (quotation marks omitted); *see Missouri v. McNeely*, 569 U.S. 141, 149 (2013). "A claim of exigent circumstances . . . must be evaluated in terms of the time

when the law enforcement authorities first had an opportunity to obtain a search warrant . . . ." *State v. Dunlap*, 395 A.2d 821, 824 (Me. 1978).

[¶13]  The "natural dissipation of alcohol in the blood," by itself, is not sufficient to establish exigent circumstances, although, in some circumstances, it can contribute to the creation of an exigency.  *McNeely*, 569 U.S. at 156; *Arndt*, 2016 ME 31, ¶ 10, 133 A.3d 587.  As the *McNeely* Court explained,

> In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so.  *See McDonald v. United States*, 335 U.S. 451, 456, 69 S. Ct. 191, 93 L. Ed. 153 (1948) ("We cannot . . . excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made [the search] imperative").  We do not doubt that some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test.  That, however, is a reason to decide each case on its facts, as we did in *Schmerber*, not to accept the "considerable overgeneralization" that a *per se* rule would reflect.  *Richards*, 520 U.S., at 393, 117 S. Ct. 1416, 137 L. Ed. 2d 615.

*McNeely*, 569 U.S. at 152-53 (alteration in original).

[¶14]  A circumstance that *does* justify a warrantless seizure is a "now or never" situation—in other words, where an officer cannot "reasonably obtain a warrant before a blood sample can be drawn without significantly undermining

10

the efficacy of the search." *McNeely*, 569 U.S. at 152-53; *see also State v. Cormier*, 2007 ME 112, ¶ 17, 928 A.2d 753.

[¶15]  That was the case here, as the court found.  The police did not have probable cause to believe that Pierce had operated while under the influence until Pierce heard Palmer admit that he had consumed alcohol earlier in the day.  Until then, the information suggested only an unexplained collision, albeit a serious one, for which Palmer was at fault.[2]  By the time Pierce acquired evidence that alcohol may well have been a factor, several hours had already elapsed since the time of the accident, allowing for some metabolization of the alcohol in Palmer's system, and Palmer was about to go into surgery because of his extensive injuries.  During that surgery, when Palmer would not be available for a blood draw as part of the State's investigation,[3] Palmer's body would further metabolize any alcohol that might be in his blood.  Thus, there was very

---

[2]  Palmer argues that the police had ample opportunity to obtain a warrant because the collision occurred sometime around 4:00 p.m. and Pierce did not even arrive at the hospital where Palmer had been transported until after 6:30 p.m.  A warrant could not have been obtained during the interim, however, because probable cause did not arise until shortly before a sample of Palmer's blood was taken at the hospital, when Pierce heard Palmer say that he had been drinking before the motor vehicle crash. *See State v. Dunlap*, 395 A.2d 821, 824 (Me. 1978).

[3]  Palmer argues in part that the impending surgery did not create any urgency for the police to forego a warrant because a blood sample could have been taken during the surgical procedure.  We are not persuaded by the suggestion that we should expect a surgical team, while operating on a patient for extensive injuries, to make way for a law enforcement officer to take a blood sample as part of a criminal investigation—setting aside the question of whether the reliability of a chemical analysis of a blood sample would have been compromised by the administration of any anesthesia or other medications to Palmer as part of the surgical process.

little time between the moment when probable cause came to exist and the surgery that created the exigency by making Palmer unavailable for the investigatory blood draw.  This amounted to a "now or never" situation, where a delay until after the surgery would "significantly undermin[e] the efficacy of the search." *McNeely*, 569 U.S. at 152-53.

[¶16]  The court therefore did not err by concluding that the amount of time that had already passed from the time of the accident and the absence of any meaningful opportunity for the officer to obtain a warrant created an exigency that justified the warrantless blood draw.  *Arndt*, 2016 ME 31, ¶¶ 10-11, 133 A.3d 587.

The entry is:

Judgment affirmed.

---

Jeremy Pratt, Esq., and Ellen Simmons, Esq., Camden, for appellant Rowe L. Palmer

Maeghan Maloney, District Attorney and Tyler J. LeClair, Asst. Dist. Atty., Prosecutorial District IV, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2016-796
FOR CLERK REFERENCE ONLY