STATE OF MAINE                              UNIFIED CRIMINAL COURT
CUMBERLAND, ss.                            DOCKET NO CR-19-0489

STATE OF MAINE
Cumberland, SS. Clerk's Office

AUG 16 2019

RECEIVED

STATE OF MAINE

v.                                         ORDER ON DEFENDANT'S
                                           MOTION TO SUPRESS

CHRISTINE STILPHEN          )


        This matter came before the court on July 18, 2019 for hearing on
Defendant's motion to suppress.  Defendant was present and represented
by Attorney Robert Levine, Esquire.  The State was represented by
Assistant District Attorney Deborah A. Chmielewski, Esquire.

        At the onset of the hearing, Defendant clarified the issues raised by
her motion to suppress.  Specifically, Defendant challenges whether
there was sufficient probable cause to arrest and whether her Due
Process rights were violated and therefore any evidence related to her
refusal to take a chemical test must be suppressed.  Defendant
specifically stipulated that she was not challenging whether or not there
was reasonable articulable suspicion to stop Defendant's vehicle, but
rather she was challenging the voluntariness of the test and/or refusal to
submit to the test under a due process analysis.

        The court heard the testimony of Officer Matthew Yeaton of the
Falmouth Police Department and admitted Defendant's Exhibit 1, a
Social Security Administration Notice of Decision dated Marcy 22, 2012,
without objection.  After hearing, and having considered all of the
evidence and arguments presented, the court makes the following
findings of fact and conclusions of law.

        Matthew Yeaton has been employed as a law enforcement officer
for eighteen years with the last two years by the Town of Falmouth.
Presently he is assigned as a detective, and prior to that assignment he
was a patrol officer with the Falmouth Police Department.
Prior to joining the Falmouth Police Department, Detective Yeaton was
employed by the Monmouth Police Department, the Wells Police
Department, and the Saco Police Department where he spent
approximately fourteen years.  Additionally, Detective Yeaton has been a
senior instructor in OUI, Field Sobriety Tests for the Maine State
Criminal Justice Academy for fourteen years.

        On January 26, 2019, at approximately 1:00 am, Detective Yeaton
was working as a patrol officer, patrolling the Gray Road area in
Falmouth.  As he traveled south bound on the Gray Road, Detective

1

Yeaton observed a vehicle traveling northbound at a high rate of speed. Traffic was light and the observed vehicle was the only other vehicle on the road other than Detective Yeaton's vehicle. The posted speed for the area was 35 mph. Detective Yeaton visually estimated the vehicle's speed to be 45 mph and confirmed at 45 mph using his radar. Detective Yeaton turned his vehicle, pulling in behind the observed vehicle and initiated a traffic stop.

Detective Yeaton identified the driver and sole occupant of the vehicle to be Defendant, Christine Stilphen, through her Maine State Driver's License. He informed Defendant as to the reason for stopping her. While speaking with Defendant, Detective Yeaton noted the smell of alcohol coming from the driver's window area. As Defendant was producing her documentation, Detective Yeaton noted an open bag which contained what appeared to be empty Bud Light aluminum bottles. Defendant acknowledged that she had been drinking earlier in the evening with a friend, stating that she had had consumed two aluminum bottles of Bud light beer a couple hours earlier.

Detective Yeaton requested Defendant to step out of her vehicle so that he could perform field sobriety tests. The tests were conducted in the space between Defendant's vehicle and the officer's vehicle. The area was well lit by both street lights for the adjacent toll booth area as well as Detective Yeaton's vehicle lights and flashlight. The weather was clear and cold, consistent with January weather.

Prior to conducting the field sobriety tests, Detective Yeaton asked Defendant if she had any medical conditions, physical ailments, or if she was under a doctor's care. He also asked if she was on or prescribed any medication or if she had taken any illegal drugs. Defendant answered no to all the questions except noting that she did wear glasses for nearsightedness.

Detective Yeaton began the field sobriety tests with the Horizontal Gaze Nystagmus (HGN). After the officer explained the HGN test to Defendant she acknowledged that she understood. Detective Yeaton observed six out of six clues during this test: lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and the onset of nystagmus prior to 45 degrees in both eyes.

Detective Yeaton next asked Defendant to perform the "Walk and Turn" test. Detective Yeaton instructed Defendant to stand with her feet together and watch as he explained and demonstrated the test. While in that so-called "instructional position," Defendant lost her balance, stepped out of the instructional position, and attempted to start the test before being instructed to do so. Once Detective Yeaton finished

2

explaining the test, Defendant indicated that she understood it and believed she could complete the test as requested.. During the test, Detective Yeaton identified the following clues: Defendant stepped off the fog line, lost her balance, used her arms for balance and took more than the requested number of steps. After turning around, Defendant again stepped off the line and raised her arms for balance.

Finally, Detective Yeaton asked Defendant to perform the One Leg Stand test. He explained the test, and asked if Defendant understood, which she indicated that she did and thought she could conduct the test as requested. While performing the test, Defendant was unable to keep her foot elevated to the requested height, she lost her balance, put her foot down early, and did not count out loud as instructed. Detective Yeaton also noted that Defendant swaying back and forth during the test. At the completion of the field sobriety tests, Detective Yeaton, based on his observations of Defendant throughout his contact with her and his determination that she was under the influence, placed her under arrest for operating under the influence.

Detective Yeaton transported Defendant to the Cumberland County Jail to perform the intoxilizer test. Once seated in the intoxilizer room, Detective Yeaton explained to Defendant that they were there for her to take the test. Defendant informed Detective Yeaton that she would not be taking the test and that she did not have to take the test if she chose not to. At that point Detective Yeaton read, verbatim, the State of Maine Implied Consent form, after which Defendant again stated that she would not be taking the test. The two talked about the test for a few minutes, at no time did Defendant change her mind, and continued to refuse to take the test. Detective Yeaton noted her refusal to submit to the test. Throughout her interactions with the officer, her answers were responsive and Detective Yeaton believed that Defendant understood the process, the intoxilizer, and what was being requested of her.

The court admitted, over objection from the State, a 2012 Notice of Decision from a Social Security Disability Adjudication hearing offered by Defendant. In that decision, Defendant was found, for the purposes of whether or not Defendant was disabled under the Social Security Act, to be disabled.[1]

---

[1] Specifically, the decision finds that Defendant "has the following severe impairments: organic mental disorder/attention deficit hyperactivity disorder (ADHD); affective disorder/depression, NOS; and anxiety-related disorder/anxiety, NOS." Decision, dated March 22, 201, p. 3, ¶3 (citations omitted).

"In the context of an OUI investigation, an officer only needs evidence sufficient to support the reasonable belief that the person's senses are affected to the slightest degree, or to any extent, by the alcohol that person has had to drink." *State v. Palmer*, 2018 ME 108, ¶10. (quotations and citations omitted.) "An officer does not need objective evidence of the impairment itself; rather, the officer need only entertain a reasonable suspicion that impairment may exist. Reasonable basis for suspicion of being under the influence can exist independently of any evidence of actual impairment." *State v King*, 2009 ME 14, ¶8. (quotations and citations omitted.)

In this case, the officer stopped Defendant's vehicle, late at night, for speeding. Defendant admitted to consuming alcohol and performed poorly on the field sobriety tests. The court finds that Detective Yeaton had probable cause to arrest her for OUI.

The next question for the court is whether Defendant's due process rights were violated in the attempt to have her submit to the chemical test following her arrest.[2]

> The Due Process Clause of the Constitution prohibits deprivations of life, liberty, or property without "fundamental fairness" through governmental conduct that offends the community's sense of justice, decency and fair play. "Due process" is a flexible concept -- the process required by the Clause with respect to the termination of a protected interest will vary depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur. The test for determining whether state action violates the Due Process Clause, ... requires a court to consider: (1) the private interest that will be affected by the government's action; (2) the risk of an erroneous deprivation of such interest through the existing procedure and the probable utility of additional or substitute procedural safeguards; and (3) the government's interest in adhering to the existing procedure, including fiscal and administrative burdens that additional procedures might entail.

*Roberts v. Maine*, 48 F.3d 1287, 1291-92 (1st Cir. 1995). Maine courts have held that the loss of a driver's license "is a property interest worthy of due process protection." *State v. Stade*, 683 A.2d 164, 166 (Me. 1996).

---

[2] Defendant raised a due process violation in her motion and again at the onset of the hearing. At the end of the hearing, Defendant appears to withdraw that ground for suppression, but it is not expressly withdrawn, so the court addresses its merits.

Defendant does not allege that Detective Yeaton mislead her in any way prior to or during efforts to administer the test. The court finds that, unlike in *Stade* and *Roberts*, Detective Yeaton did not make any erroneous or misleading statements to Defendant.

Defendant suggests that due to disabilities that were unknown by the officer at any time during this arrest, Defendant's Due Process Rights were violated so as to render her refusal invalid.

Defendant answered all of Detective Yeaton's questions in a responsive manner. When asked if she had any medical conditions, physical ailments, or if she was under a doctor's care Defendant said no. At no time did Defendant offer to the officer that she suffered from any type of disability that would affect her ability to understand and/or comply with any of the tests. Defendant performed the field sobriety tests, albeit poorly. She told the officer when asked to submit to the intoxilizer that would not be taking the test and that she did not have to take the test if she did not want to.

The court finds that there was no due process violation in the administration of the test, and the reading of implied consent. The question of whether or not Defendant refused the test is a question of fact for the fact finder at trial.

Based on the foregoing, the court is satisfied that the officer had objectively reasonable articulable suspicion to stop Defendant's vehicle, and therefore, Defendant's Motion to Suppress is DENIED.

The Clerk shall enter this Order upon the docket by reference.

Dated: August 16, 2019

_____
Deborah P. Cashman
Judge, Maine District Court

5

STATE OF MAINE
CUMERLAND, ss.

UNIFIED CRIMINAL COURT
PORTLAND
Docket No. CR-19-489

STATE OF MAINE )
)
)
)
v. )
)
)
)
CHRISTINE STILPHEN )
)
Defendant )

ORDER ON DEFENDANT'S
MOTION FOR NEW TRIAL

REC'D CUMB CLERKS OFC
OCT 31 '19 PM 1:36

Defendant was convicted of a second-offense OUI on October 10, 2019 after a one-day jury trial. She seeks a new trial on the ground that "the State's lead witness, Falmouth Police Officer Matthew Yeaton, impermissibly engaged in an out-of-court conversation with the jury foreperson." *See* Motion for New Trial filed October 17, 2019 at ¶ 3. Defendant concedes that the conversation did not relate to the substance of the trial (the officer and the juror, who had discovered that they had grown up in neighboring towns, were talking about Christmas lights), that the court conducted a voir dire of the foreperson, and that the "Defendant's lawyer decided to allow her to remain on the jury," but contends nonetheless that the court erred in allowing the juror to remain on the jury such that a new trial is warranted. *See* Motion at ¶ 10 (reasoning that the presumption of prejudice was not cured because Officer Yeaton initiated the impermissible contact and did not disclose it until he "was caught in the act").

In considering whether a juror has been tainted, the Law Court has reasoned: "[O]nce a juror has been exposed to potentially prejudicial extraneous information, the trial court must make appropriate inquiry to insure that the fairness of the trial has not been compromised. If the trial court finds a reasonable possibility of prejudice, a presumption arises that the verdict will be tainted; if he finds none, the matter is ended unless his determination was clear error." *State v. Libby*, 435 A.2d 1075, 1079 (Me. 1981) (internal citations omitted). While the *Libby* court addressed in-court extraneous information -- a reference during testimony to a previous trial involving Defendant – the same analysis applies to out-of-court exchanges involving a juror. *See, e.g., State v. Prentiss*, 557 A.2d 619, 621 (Me. 1989) (court's decision to retain juror who overheard news reporter

reference defendant's escape prior to trial was not clearly erroneous where court questioned juror and juror stated that his judgment would not be affected).

Here, once the court became aware that an out-of-court conversation had occurred between the juror and Officer Yeaton, it conducted a voir dire of the juror and Defendant's counsel agreed that the juror should remain. The fact that the jury ultimately returned a verdict of guilty does not provide a basis for the court to determine that its decision to retain the juror with counsel's agreement was in error. Maine case-law, and cases from other jurisdictions involving similar fact-patterns, support the court's ruling that the foreperson's conversation with the officer does not require a new trial where the court inquired of the juror and where the conversation did not concern the case. *See, e.g., State v. Holland*, 364 S.E.2d 535 (W.Va. 1987) ("We do not think that the trial court in this case abused its discretion in failing to find that the defendant was injured by the fact that the trooper carried on a short conversation with several members of the jury, when the conversation did not in any manner relate to the defendant's case. Although this type of communication is neither condoned nor approved, the trial judge heard evidence relating to the conversation and found that no prejudice resulted therefrom. It was within the judge's discretion to make this decision and there is nothing to show that there was an abuse of that discretion".)

It is accordingly hereby ORDERED that Defendant's Motion for a New Trial is DENIED.

DATED: 31 Oct 19

_____
Jed J. French
Judge/Unified Criminal Court

Entered on the Docket: 10/31/19

2